## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **JOHN THOMPSON and** | ) | **Case No.** |
| **MEGAN GOVEA THOMPSON,** | ) | |
| *individually and on behalf of* | ) | **CLASS ACTION COMPLAINT** |
| *themselves and all others similarly* | ) | |
| *situated*, | ) | **JURY TRIAL DEMANDED** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **EQUIFAX, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs John Thompson and Megan Govea Thompson ("Plaintiffs"), by undersigned counsel, files this Class Action Complaint on behalf of themselves and a class of all similarly situated individuals against Equifax, Inc. ("Equifax" or "Defendant"). Plaintiffs base the following allegations upon personal information and belief, and the investigation of counsel:

### INTRODUCTION

1.      Alongside Experian and TransUnion, Equifax is one of the "Big Three" consumer credit reporting agencies in the United States. Equifax uses its over 13,000

employees, to deliver billions of credit files to lenders each year. [1] In 2021, Equifax earned over $4.9 billion in revenue.

2.      As Equifax's business consists primarily of assembling and evaluating consumer credit information, with the purpose of furnishing that information to third party lenders, Equifax is a consumer reporting agency as defined in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

3.      The FCRA was enacted by Congress in "1970 out of concerns about abuses in the consumer reporting industry." *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001) (*citing* S. Rep. No. 91-517, at 3 (1969)).

4.      While acknowledging the vital role consumer reporting agencies play in the consumer credit industry, Congress noted that inaccurate credit reports "directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence which is essential to the continued functioning of the banking system." 15 U.SC. § 1681(a). For that reason, the primary purpose of passing the FCRA was to ensure that credit reporting agencies adopt reasonable procedures to ensure accuracy. 15 U.S.C. § 1681(b).

---

[1] *See Who We Are*, Equifax https://www.equifax.com/about-equifax/who-we-are/ (last visited August 15, 2022).

5.    As such, the FCRA requires that whenever a consumer reporting agency, like Equifax, prepares a consumer report it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

6.    Between March 17th and April 6th of this year, Equifax's credit reporting system delivered inaccurate credit scores to prospective lenders for potentially millions of individuals. As many as 300,000, of those individuals, had credit scores reported to potential lenders that were off by as many as 25 points or more.[2] A shift of that magnitude can have a serious impact on a creditor's lending decisions—including raising the cost of acquiring credit or being denied credit outright.[3]

7.    Equifax has acknowledged that it delivered inaccurate credit scores during that time period and has blamed the false reporting on a coding error (the "Error") that occurred during a migration of consumer credit data from a legacy, on-premises server environment to a cloud-based system.

---

[2] *Credit Score Coding Issue Fixed*, https://www.equifax.com/personal/education/credit/scores/credit-score-coding-issue-corrected/ (last visited on August 23, 2022).

[3] Irina Ivanova, *Has the Equifax credit report error affected you? Here's how to find out*., CBS News (Aug. 11, 2022 1:15 PM) https://www.cbsnews.com/news/equifax-maxine-waters-wrong-credit-score-error-2022/.

8.    This Error was entirely foreseeable, and directly attributable to Equifax's failure to maintain reasonable procedures to ensure that such a coding error did not occur and therefore failed to meet its obligations under the FCRA. Additionally, Equifax permitted inaccurate scores to be reported for three weeks when it knew, or should have known, that the credit scores it was providing to potential lenders were not accurate.

9.    Equifax's failure to maintain reasonable procedures to prevent such a coding error, and its delay and inaction in correcting the coding error, constitutes a reckless and willful violation of the FCRA.

10.    Equifax's actions caused Plaintiffs and the Class Members actual injury in the form of economic damages and reputational harm.

11.    Plaintiffs bring this case on behalf of themselves and all other Class Members who were harmed by Equifax's negligent and/or willful failure to maintain reasonable procedures in violation of the FCRA and seeks to recover actual, statutory, and punitive damages as permitted by law. In addition to damages, Plaintiffs seek injunctive relief.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331 as well as 28 U.S.C. § 1332(d), the Class Action Fairness Act, which

affords federal courts original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Here, the Plaintiffs, and many Class Members, are diverse from the Defendant because the Plaintiffs reside in Kansas and Equifax resides, and maintains its principal place of business, in Georgia. Plaintiffs allege that, in the aggregate, the Class encompasses more than 100 Class Members, and the claims of all Class Members exceed $5,000,000 exclusive of interest and costs.

13.    This Court has personal jurisdiction over the Defendant because Equifax operates its principal place of business in this District and regularly conducts business in Georgia, additionally, a substantial part of the events and conduct giving rise to the Plaintiffs' claims occurred in this State.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Equifax is located and operates its principal place of business here, because Equifax conducts substantial business in this District and has substantially availed itself of the laws and markets of this District, and because a substantial part of the events and conduct giving rise to the Plaintiffs' claims occurred in this District.

## PARTIES

15.    **Plaintiffs** John Thompson and Megan Govea Thompson are residents of Kansas.

16.    Plaintiffs are "consumer[s]" as defined by the FCRA. 15 U.S.C. §1681a(c).

17.    **Defendant** Equifax is a resident of Georgia. It is incorporated in Georgia with its headquarters at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

18.    Equifax is one of the "Big Three" credit reporting agencies and is engaged in the business of accumulating consumer credit information and providing that information to third-party lenders to assist them in making credit decisions.

## FACTUAL BACKGROUND

### A. As a Credit Reporting Agency Equifax Has a Duty to Ensure Maximum Possible Accuracy in Providing Consumer Reports

19.    As one of the "Big Three" consumer credit reporting agencies, alongside TransUnion and Experian, Equifax's credit reporting plays an essential role in the way companies make lending decisions.[4]

---

[4] *Who We Are*, *supra* n. 1.

20.    The consumer reports generated by Equifax each year impact the ability of millions of consumers to obtain credit, including credit cards, home loans, and car loans, and the terms that are offered to the consumer with respect to that credit.

21.    Equifax takes it upon itself to actively gather information on millions of consumers, which includes everything from where they live to how often they make payments on time. Equifax then aggregates and analyzes that data and sells it to prospective lenders who rely on Equifax's reporting to evaluate the credit worthiness of a particular individual.

22.    Equifax provides both an "estimate" of the credit worthiness of the consumer in the form of a credit score, as well as a more detailed credit report—to assist them in deciding whether to lend to an individual consumer. The credit score is billed by Equifax as a "objective" proxy for credit risk.[5] A single number can sum up (or reduce) a lengthy, complicated credit history extending over many years and dozens of creditors. For busy creditors making credit decisions in fast-paced markets, the credit score may be far more important in making decisions than the full report.

---

[5] *How do lenders use credit scores*, Equifax, https://www.equifax.com/personal/help/lenders-credit-scores/ (last visited on Aug. 26, 2022).

23.     A credit score is calculated by Equifax using a formula not disclosed to the consumer.  While a consumer can review and dispute the individual accounts and personal data listed in his report, the lack of disclosure regarding calculation of credit scores means that consumers cannot check whether the score is or is not accurately calculated.

24.     In fact, when a creditor requests a credit score and report from Equifax the consumer is not always informed of the score that is provided.

25.     The credit scores, and credit reports, distributed by Equifax to third party creditors for use in determining credit worthiness and credit decisions, fall within the definition of a "consumer report" under the FCRA.

26.     The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit. 15 U.S.C. § 1681a(d)(1)(A).

27.     In disseminating "consumer reports", including credit scores, the FCRA requires Equifax to have in place "reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

28.    Accuracy in consumer reporting was the primary reason Congress passed the FCRA. 15 U.S.C. § 1681(b). As the CFPB has noted, "[a]ccuracy in consumer reports is of vital importance to the consumer reporting system, particularly as consumer reports play an increasingly important role in the lives of American consumers."[6]

29.    As one legislator remarked at the time, "with the trend toward … the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home."

**B. Plaintiffs Were Victims of Equifax's Inaccurate Reporting**

30.    On or about February 19, 2022, Plaintiffs applied for a home loan and were preapproved.

---

[6] Bureau of Consumer Fin. Prot., *Fair Credit Reporting; Name-Only Matching Procedures*, 86 FR 62468, 62468 (Nov. 10, 2021).

31.    At the time of the pre-approval in February 2022, Plaintiffs' Equifax credit scores were used to establish an estimated interest rate of 3.5 %, based in whole or in part on the scores provided by Equifax.

32.    Using their pre-approval, Plaintiffs began shopping for a home in an extremely competitive market.

33.    Plaintiffs made an offer on a home in March of 2022.

34.    Plaintiffs' offer was ultimately accepted, and they were set to close on the home on March 22, 2022.

35.    Prior to closing, their lender, Community Mortgage LLC, requested credit check from Equifax.

36.    In March 2022, Equifax reported a credit score lower than that reported in February 2022.

37.    Plaintiffs are unaware of any reason why their credit scores should have changed between February and March of 2022.

38.    Plaintiffs believe the March 2022 Equifax score was wrongly deflated.

39.    Due to Defendant Equifax's inaccurate reporting, on or about March 15, 2022, Community Mortgage LLC raised the Plaintiffs' interest rate to 4.6%.

40.    Plaintiffs were forced to either accept the increased rate and closing costs or lose the home.

41.   Equifax knew it had misreported information on thousands of borrowers and applicants, wrongfully increasing their borrowing costs, but did not attempt to remedy the harm done to Plaintiff or compensate them for their out-of-pocket losses, the financial harm, and the reputational harm caused by the Equifax.

## C. Equifax's Coding Error Harms Thousands of Consumers

42.   In May 2022, Equifax began quietly acknowledging to creditors that between mid-March and April 6, 2022 a "coding issue" in its database, calculated inaccurate credit scores sent out creditors.[7]

43.   Equifax acknowledged that the "coding issue" occurred "within a program slated for replacement."[8]

44.   The "coding issue" ultimately caused some credit scores to be inaccurate by as many as 20 or more points.[9]

---

[7] Andrew Ackerman & AnnaMaria Andriotis, *Equifax Sent Lenders Inaccurate Credit Scores on Millions of Customers*, Wall Street Journal (Aug. 2, 2022), https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483; Steve Goode, *Equifax Telling Lenders of Potential Errors in Credit Scores,* NationalMortgageProfessional.com (May 27, 2022), https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores.

[8] Goode, *supra* n. 7.

[9] Goode, *supra* n. 7; Ackerman & Andriotis, *supra* n. 7.

45.     Some consumers went from being reported to have a credit score in the 700s to no credit score at all, or vice versa.[10]

46.     Equifax itself has admitted that hundreds of thousands of consumers had shifts in their scores of 25 points or more.[11]

47.     While initial reporting focused on mortgage clients,[12] subsequent reporting revealed that Equifax also sent erroneous scores to creditors providing auto loans and credit cards.[13]

48.     During the time the "coding error" was in effect mortgage lenders alone are estimated to have sought around 2.5 million credit scores.[14]

49.     Mark Begor, Equifax's chief executive, publicly acknowledged the Error at a June investor conference, stating that the Error "resulted in some scores going out that had incorrect data…."[15]

## D. Consumers are Irreparably Harmed by Inaccurate Credit Reporting

---

[10] Ackerman & Andriotis, *supra* n. 7.
[11] *Equifax Statement on Recent Coding Issue,* Equifax, (Aug. 2, 2022) https://www.equifax.com/newsroom/all-news/-/story/equifax-statement-on-recent-coding-issue/.
[12] Goode, *supra* n. 7.
[13] Ackerman & Andriotis, *supra* n. 7.
[14] *Id.*
[15] *Id.*

50.     According to the CFPB, "inaccurate information in consumer reports can have significant adverse impacts on consumers…. Consumers with inaccurate information in their consumer reports may, for example, be denied credit or housing they would have otherwise received, or may be offered less attractive terms than they would have been offered if their information had been accurate."[16]

51.     A 20-point credit score inaccuracy, like some of those caused by the Error, may be "enough to alter the interest rates consumers were offered or to result in their applications being rejected altogether."[17]

52.     As a result of Equifax's Error, Plaintiffs and Class Members suffered actual harm and have suffered and will continue to suffer economic and other damages.

53.     The harm that Plaintiffs and Class Members incurred as a result of Equifax's response in relation to Error was not remedied merely by Equifax's cessation of inaccurate reporting.

**E. Equifax's Action Constitutes a Violation of the FCRA**

54.     In allowing for the "coding issue" to occur, Equifax violated its duties and obligations as a credit reporting agency under the FCRA.

---

[16] Bureau of Consumer Fin. Prot., *Fair Credit Reporting; Name-Only Matching Procedures*, 86 FR 62468, 62468 (Nov. 10, 2021).
[17] Ackerman & Andriotis, *supra* n. 7.

55.    Further, Equifax knew or should have known of its duties and obligations under the FCRA.

56.    Equifax consciously breached its duties and obligations under the FCRA by allowing the Error and subsequent reporting inaccuracies to occur.

## CLASS ALLEGATIONS

57.    Plaintiffs bring this action on behalf of themselves and all other similarly situated Class Members pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

> All individuals and entities in the United States whose credit score or consumer report was inaccurately reported or inaccurately provided to potential creditors as a result of the Error reported by Equifax (the "Class").

58.    The Class Period runs from the beginning of the greatest applicable statute of limitations to the present.

59.    Plaintiffs reserve the right to modify the class definition or to add subclasses.

60.    The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

61.    **Numerosity.** Consistent with Rule 23(a)(1), the Class is so numerous and geographically dispersed that joinder of all Class Members is impracticable.

Plaintiffs believe that there at least hundreds of thousands or millions of consumers throughout the United States that would be members of the Class. Class Members may be identified through discovery and notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

62.     **Commonality and Predominance.**  Consistent with Fed. R. Civ. P. 23(a)(2)' commonality requirement and 23(b)(3)'s predominance requirement, this action involves common question of law and fact that predominate over any questions affecting individual Class members.  These common questions include, but are not limited to:

a.     Whether, during the class period, Equifax disclosed, or adequately disclosed, the Error to lenders or consumers;

b.     Whether Equifax used reasonable procedures to ensure that the information included on consumer credit reports was maximally accurate;

c.     Whether Equifax's measures to ensure accurate consumer reports, violate the FCRA;

d.     Whether Equifax acted willfully when allowing the Error to continue without remedy;

e.    Whether Plaintiffs and the Class are entitled to damages;

f.    Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and

g.    Whether Plaintiffs and the Class are entitled to attorneys' fees and costs.

63.    **Typicality**.  Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs are typical of members of the Class. Plaintiffs suffered injuries as a result of Defendant's uniform wrongful conduct in violation of law, as complained of herein.

64.    **Adequacy**.  Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and all are committed to pursuing this matter to obtain relief for themselves and for the proposed Class.  Plaintiffs have no conflict of interest with the Class. Plaintiffs also retained counsel considerable experience and success in prosecuting complex class-actions and consumer-protection cases. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

65.    **Superiority**.  Consistent with Fed. R. Civ. P 23(b)(3), class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy for multiple reasons. First, prosecutions of individual actions are economically impractical for members of the Class. The

quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class may be relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Second, the Class is readily definable. Finally, the class action device presents far fewer management difficulties here and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Individual litigation by each Class member would strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, no unusual difficulties are likely to be encountered in the management of this class action.

## CLAIMS

## COUNT I

## Willful Violations of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681, et seq.
### *(On Behalf Of The Class)*

66. Plaintiffs reallege and incorporate by reference every allegation set forth in the paragraphs 1 through 65 as though alleged in this Count.

67.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

68.     At all relevant times, Equifax was a consumer reporting agency as defined by the FCRA. 15 U.S.C. §1681a(f).

69.     At all relevant times, Equifax had compiled and maintained a "consumer report" on Plaintiffs and Class Members as defined by the FCRA. 15 U.S.C. § 1681a(d)(1).

70.     As individuals, Plaintiffs and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

71.     As a consumer reporting agency, Defendant is required to follow reasonable procedures to assure maximum possible accuracy of the information in the consumer reports it prepares. 15 U.S.C. 1681e(b).

72.     As a consumer reporting agency, Defendant's actions or inactions that allowed for the Error and the reporting inaccuracies caused by the Error violate its duties and obligations as a credit reporting agency under the FCRA.

73.     Equifax knew or should have known of its duties under the FCRA.

74.     Despite knowing its legal obligations, Equifax willfully breached its duties under the FCRA and failed to take reasonable steps to ensure its compliance with the FCRA.

75.    Equifax's Error directly caused damages to Plaintiffs and Class members.

76.    Equifax is liable to Plaintiffs and Class Members for their actual damages as a result of Equifax's failure to comply with the FCRA.

77.    Further, Plaintiffs and Class Members are entitled to recover statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for attorneys' fees and costs pursuant to §1681n and §1681o.

78.    Each instance in which Equifax has failed to comply with Section 607 of the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary damages.

## COUNT II

### Negligent Violations of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681, et seq.
### *(On Behalf Of The Class)*

79.    Plaintiffs reallege and incorporate by reference every allegation set forth in the paragraphs 1 through 63, 68-73, 75-76, and 78 as though alleged in this Count.

80.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

81.    Equifax negligently engaged in the foregoing wrongful actions, inaction and omissions, and failed to exercise reasonably prudent ordinary care by failing to identify, implement, maintain and monitor the proper measures, policies, procedures, and protocols to ensure the maximum possible accuracy of the consumer credit information in its possession, custody and control, including Plaintiffs' and Class members' credit reports and credit scores, which directly and proximately caused harm to Plaintiffs and Class Members in violated the FCRA, 15 U.S.C. § 1681, et seq.

82.    Despite knowing, or being in a position to know such that it should have known, that it failed to implement and maintain adequate, readily available measures and procedures to ensure the maximum possible accuracy of its consumer credit reports, Equifax relied on its inadequate measures and procedures and therefore had no reason to believe that all of the information contained in its consumer credit reports was of maximum possible accuracy.

83.    Defendant's failure to ensure the maximum possible accuracy of its consumer credit reports despite knowing or being in a position to know if its inadequate measures and procedures constitutes negligent conduct.

84.    As a direct and proximate result of Equifax's actions and failures that gave rise to the Equifax Failure, as alleged herein, Equifax offered, provided, and

furnished Plaintiff's and Class Members' inaccurate consumer reports. In each instance, Equifax was in violation of FCRA § 1681e.

85.    Equifax is liable to Plaintiffs and Class Members for failing to comply with the requirements that a consumer reporting agency not disclose consumer reports and take measures designed to avoid the unauthorized disclosure of consumer reports.

86.    Equifax is liable to Plaintiffs and Class Members for their actual damages as a result of Equifax's failure to comply with the FCRA, as well as costs and reasonable attorneys' fees.

87.    Each instance in which Equifax has failed to comply with Section 607 of the FCRA constitutes a separate violation of the FCRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for the following relief:

a.  An order certifying the Class, naming Plaintiffs as a representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the proposed Class;

b.  An order declaring that Defendant's conduct violates the statutes referenced herein;

c.  Injunctive relief as pleaded or as the Court may deem proper;

d.  An award of all actual, compensatory, statutory, and punitive damages available, in amounts to be proven at trial;

e.  An award of all nominal damages available;

f.  Disgorgement of all of Equifax's profits that were derived, in whole or in part, from Equifax's provision of inaccurate consumer reports;

g.  An order of restitution and all other forms of equitable monetary relief;

h.  An award of prejudgment interest on all amounts awarded;

i.  Reasonable attorneys' fees, costs, and litigation expenses pursuant to 15 U.S.C. § 1681n(a)(3), O.C.G.A. §13-6-11, and as otherwise allowed by law;

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: August 26, 2022.

/s/ *H. Clay Barnett, III*

H. Clay Barnett, III (GA Bar No. 74058)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Overlook II
2839 Paces Ferry Road SE, Suite 400
Atlanta, Georgia 30339
Clay.Barnett@Beasleyallen.com

W. Daniel "Dee" Miles, III (*pro hac vice*)
Alison "Ali" D. Hawthorne (GA Bar No. 146170)
Rachel N. Minder (*pro hac vice*)
Paul W. Evans (*pro hac vice*)
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Alison.Hawthorne@BeasleyAllen.com
Rachel.Minder@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com


Victoria S. Nugent (*Pro hac vice* forthcoming)
Brian E. Johnson (*Pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 220025
Telephone: (202) 408-4600
vnugent@cohenmilstein.com
bejohnson@cohenmilstein.com

A.J. Stecklein (*Pro hac vice* forthcoming)
Michael H. Rapp (*Pro hac vice* forthcoming)
**STECKLEIN & RAPP CHARTERED**
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-0727
aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com